IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAULINE HENDERSON, | ) | CASE NO. 1:10 CV 2773 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 1383(c) by Pauline Henderson for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] After the Commissioner filed an answer[3] and the administrative record,[4] the parties briefed their positions[5] and participated in a telephonic oral argument.[6] For the reasons that follow, I will remand this matter for further proceedings.

---

[1] ECF # 13. The parties have consented to my jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 14 (Henderson fact sheet); ECF # 16 (Commissioner's brief and chart); ECF # 19 (Henderson's brief).

[6] ECF # 22.

## Facts

### A. The ALJ's findings and decision

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Henderson was 47 years old at the time of the hearing, has a high school education, and no past relevant work.[7] Medically, the ALJ found that Henderson had severe impairments consisting of chronic obstructive pulmonary disease, major depressive disorder, degenerative disc disease, arthritis, and carpal tunnel syndrome.[8]

The ALJ then made the following finding regarding Henderson's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a). Specifically, she can lift, carry, push and pull 10 pounds occasionally and five pounds frequently. She can sit for six hours and stand and/or walk for two hours in a normal workday. She cannot climb ladder, ramps, or scaffolds but can otherwise climb occasionally. She can occasionally stoop, kneel, crouch, and crawl. She can frequently reach and handle with the dominant upper extremity (right) and occasionally with the non-dominant upper extremity. She must avoid extreme cold or heat. She must avoid smoke, fumes, dusts, gases, hazards, unprotected heights, or dangerous machinery. She cannot drive vocationally. She is limited to simple, routine tasks. She cannot perform fast-paced work or assembly line work or piece rate work. She is limited to occasionally [sic] interaction with coworkers, supervisors, or the general public.[9]

---

[7] Transcript ("Tr.") at 17.

[8] *Id.* at 12.

[9] *Id.* at 13.

A vocational expert ("VE") was asked whether jobs existed in significant number in the national economy for a person with Henderson's age, education, work experience, and RFC.[10] The VE testified that, given the above-stated factors, a significant number of specific jobs existed locally and nationally that Henderson could perform.[11] Accordingly, based on the foregoing findings, the ALJ found Henderson not under a disability, thereby denying her application.[12]

**B.     Issues on judicial review**

Henderson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Henderson raises two issues here:

1.     Whether substantial evidence supports the ALJ's assessment of [Henderson's] non-exertional limitations with regard to reaching, handling, and fingering.

2.     Whether the ALJ was precluded from relying on [the] [VE's] testimony based on an incomplete hypothetical question which did not account for [Henderson's] oxygen use.

---

[10] *Id.* at 18.

[11] *Id.*

[12] *Id.*

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[13]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[14]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[15]

---

[13] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[14] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[15] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[16]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[17]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[18] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[19]

---

[16] 20 C.F.R. § 404.1527(d)(2).

[17] *Id.*

[18] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[19] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[20] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[21] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[22] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[23]

In *Wilson v. Commissioner of Social Security*,[24] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[25] The court noted that the regulation expressly contains a "good reasons" requirement.[26] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[20] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[21] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[22] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[23] *Id.* at 535.

[24] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[25] *Id.* at 544.

[26] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[27]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[28] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[29] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[30] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[31]

The opinion in *Wilson* sets up a three-part requirement for articulation against which an ALJ's opinion failing to assign controlling weight to a treating physician's opinion must be measured. First, the ALJ must find that the treating source's opinion is not being given

---

[27] *Id.* at 546.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

controlling weight and state the reason(s) therefor in terms of the regulation – the absence of support by medically acceptable clinical and laboratory techniques and/or inconsistency with other evidence in the case record.[32] Second, the ALJ must identify for the record evidence supporting that finding." [33] Third, the ALJ must determine what weight, if any, to give the treating source's opinion in light of the factors listed in 20 C.F.R. § 404.1527(d)(2).[34]

In a nutshell, the *Wilson* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[35] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[36] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[37] or that objective medical evidence does not support that opinion.[38]

---

[32] *Wilson*, 378 F.3d at 546.

[33] *Id.*

[34] *Id.*

[35] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[36] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[37] *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009).

[38] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[39] The Commissioner's *post hoc* arguments on judicial review are immaterial.[40]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[41]

- the rejection or discounting of the weight of a treating source without assigning weight,[42]

---

[39] *Blakley*, 581 F.3d at 407.

[40] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[41] *Blakley*, 581 F.3d at 407-08.

[42] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[43]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[44]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[45] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[46]

The Sixth Circuit in *Blakley v. Commissioner of Social Security*[47] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[48] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[49]

---

[43] *Id.*

[44] *Id.* at 409.

[45] *Hensley*, 573 F.3d at 266-67.

[46] *Friend*, 375 F. App'x at 551-52.

[47] *Blakley*, 581 F.3d 399.

[48] *Id.* at 409-10.

[49] *Id.* at 410.

In *Cole v. Astrue*,[50] the Sixth Circuit recently reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[51]

**B.     Application of standards**

*1.     Substantial evidence does not support the non-exertional limitations on reaching, handling, and fingering.*

As noted, the ALJ here found that Henderson had an RFC for sedentary work with additional limitations.[52] In that regard, the ALJ limited Henderson to frequent reaching and handling with the dominant upper extremity (right), and to occasional reaching and handling with the non-dominant upper extremity (left).[53] The ALJ made no findings as to any limitations on manipulation. Further, as will be discussed more fully below, the RFC finding makes no reference to the use of supplemental oxygen.

Initially, I note that reaching, handling, and fingering describe different actions. "Reaching," as understood by the Commissioner, is the extending of the hand or arm in any direction.[54] "Handling" is seizing, holding, grasping, turning, or otherwise working with the

---

[50] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[51] *Id.* at 940.

[52] Tr. at 13.

[53] *Id.*

[54] Social Security Ruling (SSR) 85-15 at 6.

-11-

whole hand or hands.[55]  "Fingering" involves picking, pinching, or otherwise working primarily with the fingers and should be understood as meaning the same as manual dexterity.[56]  In that regard, the applicable Social Security Ruling states:

> As a general rule, limitations on fine manual dexterity have greater adjudicative significance – in terms of relative number of jobs in which the function is required – as the person's exertional RFC decreases.  Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, or very heavy ranges of work.[57]

Here, Henderson argues first that consultative physician Wilfredo Paras, M.D. and state agency reviewing physician Myung Cho, M.D. stated that Henderson's problems with arthritis in her right wrist meant that she was limited to occasionally reaching and handling with her right hand.[58]  Further, she contends that those same sources,[59] plus reports from examining physician Dr. Riad Laham,[60] treating pain specialist Dr. Emad Mikhail,[61] and Dr. Emmanuel Tuffour, Henderson's primary care physician,[62] all document limitations in

---

[55] *Id*.

[56] *Id*.

[57] *Id*.

[58] ECF # 19 at 11.

[59] *Id*. at 14 (citing Tr. at 308 (Dr. Paras) and 343 (Dr. Cho).

[60] *Id.* (citing Tr. at 474-75).

[61] *Id*. (citing Tr. at 530).

[62] *Id*. (citing Tr. at 710-11, 774).

Henderson's ability to perform fine motor manipulation.[63]  And, she maintains, all these sources were not mentioned by the ALJ when he assessed no limitations regarding fine manipulation.[64]

The Commissioner correctly observes that the ALJ did take note of Dr. Paras's opinion in total and used it as a basis for the RFC finding regarding limitations on Henderson's right wrist.[65]  Further, the ALJ also took note of treating source Dr. Tuffour's opinion that Henderson had a "moderately limited physical ability to function" – an opinion the ALJ gave significant weight.[66]  The ALJ then reviewed specific aspects of Dr. Tuffour's opinion – though fine manipulation was not mentioned – giving weight to those particular opinions that he concluded were supported by evidence from the record but assigning little weight to the other opinions.[67]  The ALJ also described Dr. Paras's opinion as "mainly" offering limitations due to a painful right wrist – limitations, the ALJ concluded, were accommodated by the RFC.[68]  He gave the opinion of Dr. Cho "no weight" because the RFC

---

[63] *Id*. at 15.

[64] *Id*. at 14-15.

[65] ECF # 16 at 16 (citing Tr. at 310, 312).

[66] Tr. at 15.

[67] *Id*. at 16.

[68] *Id*.

was for a reduced range of sedentary work, while Dr. Cho said that Henderson could perform a range of light work.[69]

On this record, and applying the standard set forth above, I find that the ALJ did not sufficiently articulate his reasoning with regard to the opinions of the various medical sources as to Henderson's capacity for fine manipulation.  It is simply not possible from this record to discern the ALJ's basis for limiting Henderson to frequent use of her right upper extremity generally without any direct reference to the specific evidence in the record dealing with limitations on fine manipulation.

This deficiency cannot be harmless error.  In addition to the teaching of the Sixth Circuit, cited above, as to the crucial role of articulation in meaningful judicial review, there is the fact, as the VE in this case bears out, that properly assessing Henderson's functional capacity as specifically regards fine manipulation can be the difference between a finding that Henderson is precluded from any work activity and so disabled and the finding, as was the case here, that she is not disabled.[70]

The case must be remanded for further articulation as to the limitations, if any, on fine manipulation.

---

[69] *Id*. at 17.

[70] *Id*. at 18.

*2.     There was no error in posing the question to the VE without a specific requirement for oxygen use.*

Henderson argues that, in formulating his RFC finding, the ALJ impermissibly discounted the opinion of her treating physician, Dr. Tuffour, that she requires oxygen.[71] She contends that the ALJ disregarded that opinion in favor of "substituting his own opinion, *i.e.*, that such a limitation was unnecessary."[72] The absence of any limitation regarding oxygen led, she maintains, to posing an incomplete hypothetical question to the VE, thus depriving the ALJ of a proper basis for relying on the VE's conclusion.

The Commissioner, however, notes that although the evidence showed Henderson used oxygen and that Dr. Tuffour had prescribed oxygen, there was no evidence of any functional limitation arising from a failure to use oxygen.[73] Indeed, the Commissioner observes that Henderson failed in her burden to provide any evidence as to functional limitations arising from a need for oxygen and specifically points to the lack of such evidence from Dr. Tuffour, who prescribed the oxygen.[74]

I agree with the Commissioner. The mere presence of a condition or ailment, by itself, is no evidence that it imposes any work-related limitation.[75] As the Tenth Circuit recently

---

[71] ECF # 19 at 16-17.

[72] *Id.* at 17.

[73] ECF # 16 at 19.

[74] *Id.*

[75] *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

stated in the analogous case of *Rabon v. Astrue*,[76] an ALJ need not question a VE about a condition for which a claimant was receiving even a prescribed treatment where there was "no evidence that this condition caused any work-related functional limitation."[77]

Accordingly, the decision of the Commissioner in this regard is supported by substantial evidence.

## Conclusion

For the foregoing reasons, I find that substantial evidence does not support the finding of the Commissioner that Henderson had no disability. Accordingly, the decision of the Commissioner denying Henderson supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[78] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated: March 22, 2012             s/ William H. Baughman, Jr.
                                  United States Magistrate Judge

---

[76] *Rabon v. Astrue*, No. 11-5078, 2012 WL 516182 (10th Cir. Feb. 17, 2012).

[77] *Id.*, at *1.

[78] 28 U.S.C. § 2412(d)(1)(A).